# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| ARTURO JAIMESPIMENTZ,<br>a/k/a ARTURO JAIMES PIMENTEL | : | NO. 09-488-3 |

## MEMORANDUM

**Baylson, J.**                                                                                                                        **September 27, 2010**

      The Defendant in this case was convicted of one count of conspiracy and two counts of possession: Count I, charging conspiracy to possess with the intent to distribute heroin, cocaine and 50 grams or more of cocaine base ("crack"), Count II, charging possession with intent to distribute 50 grams or more of cocaine base ("crack"), and Count IV, charging possession with intent to distribute cocaine. The Defendant was acquitted of Count III, charging possession with intent to distribute heroin. Defendant filed a Motion for Judgment of Acquittal (Doc. No. 126) and the Court held oral argument on September 20, 2010.

      The facts in this case are fairly simple, but present a close case of sufficiency of the evidence. The Defendant was brought to a house by an individual, Nelson Acosta, who had previously pled guilty. Once inside the house, it became evident that a drug cutting and packaging operation was underway. The Defendant initially sat in the living room and had nothing to do with the operation of the drugs. However, subsequently, testimony showed that he moved to the kitchen and sat at the kitchen table where the active cutting and packaging of the drugs was underway.

The incriminating testimony against the Defendant was provided by a young woman, Ms. De Jesus, who was involved in a romantic relationship with one of the Defendants, Wilson Castro, a/k/a Jose Velazquez, who was pregnant with his child. She testified that she entered this house and went upstairs to be with Mr. Castro. She recognized Defendants, Luis Perez and Nelson Acosta, in the room and also identified the Defendant. When she entered the house, she saw Nelson Acosta at the table "putting white drugs into a small bag." (N.T. 6/7/10, p. 57). Afterwards, coming downstairs to cook a meal for Wilson Castro, she saw a third person at the table whom she identified as the Defendant. Her testimony was as follows:

> Q. What did you see when you went downstairs? We touched on that earlier.
> A. The three people were working.
> Q. What do you mean by working, would you please describe specifically what you saw?
> A. One of them was like cutting the drugs, and the other was putting them inside the bags, and the other one was counting them.
> Q. Okay. So, Luis Perez, what was he doing?
> A. He was cutting the things.
> Q. He was cutting the things. What do you mean by cutting the things, please describe what thing is?
> A. It's drugs, it's a white thing, like –
> Q. Could you describe it for us?
> A. It's like a slice of cheese and it's white.
> Q. What was he cutting it with, do you recall?
> A. With a razor.
> Q. Okay. What was Nelson Acosta doing, the person that you said you didn't recognize by name?
> A. Whatever Luis was cutting, he was putting inside a bag.
> Q. Okay. The third person who was there, did you see the third person when you came downstairs?
> A. Yes.
> Q. What was that third person doing?
> A. Like counting the everything.
> Q. Okay, and by everything – you are going to have to be more specific if you can.

|   |   |   |
|---|---|---|
| | A. | What Nelson was putting inside the bag, he was counting them. |
| | Q. | The third person was counting them? |
| | A. | Yes. |

(N.T. 6/7/10, pp. 60-61).

On cross examination the next day, Ms. De Jesus modified her testimony slightly, and said of the Defendant, "he was moving his hands like this as if he were counting." (N.T. 6/8/10, p. 5). Shortly thereafter, the police entered the building and the Defendant, among others, immediately left the kitchen and ran out the back door where the Defendant was apprehended.

After reviewing the testimony in the light most favorable to the government, the Court is of the view that the testimony is insufficient to sustain the conviction of conspiracy, as charged in Count I, but is sufficient to sustain the conviction of possession with intent to distribute, as charged in Counts II and IV. Ms. De Jesus clearly identified the Defendant as having been sitting at the table and it was obvious to any person, whether fluent in English or not, that this was a drug cutting and packaging operation. Although there is no evidence that the Defendant said anything, the evidence is clear that he did more than just sit at the table or observe, but rather became an active participant by performing the counting function. The witness was not clear as to exactly what was being counted, but the Court does not consider that a serious deficiency in the evidence. The witness also said that Defendant was "working" with the others. The fact that the Defendant fled from the premises is an additional factor under settled law for sustaining the conviction.

### A. Count I: Conspiracy

There is no evidence that the Defendant actually joined the conspiracy, and the absence of

any kind of verbal assent to the conspiracy, or any specific knowledge as to the scope and other details of the conspiracy, justifies the Court in granting the judgment of acquittal on Count I.

To establish that the Defendant joined a conspiracy, the Government has to prove each of the following three elements beyond a reasonable doubt: "(1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and (3) an agreement to work toward that goal, which [the defendant] knowingly joined." United States v. Boria, 592 F.3d 476, 481 (3d Cir. 2010) (citing United States v. Mastrangelo, 172 F.3d 288, 291 (3d Cir. 1999)). The evidence must show that the defendant "had knowledge of the specific illegal objective contemplated by the particular conspiracy." Id. The evidence of conspiracy may be direct or circumstantial. Id. (citing United States v. Brodie, 403 F.3d 123, 134 (3d Cir. 2005)). Inferences that "have a logical and convincing connection to the facts established" are permissible, but mere speculation is insufficient to uphold a conviction of conspiracy. Id. (citing United States v. Thomas, 114 F.3d 403, 406 (3d Cir. 1997)).

The Third Circuit has reversed the defendant's conviction for conspiracy in cases where the defendant did not have knowledge of the specific illegal objective of the conspiracy. For example, in United States v. Thomas, the evidence showed that Thomas had entered the motel room in which an alleged co-conspirator cooperating with the government had left a suitcase containing drugs. 114 F.3d at 404. Thomas, who was arrested when he left the room, was carrying a phone, a pager, and a firearm, but did not have the suitcase or the drugs. Id. Thomas told the arresting officers that he was offered money to check the room for the suitcase but that he knew nothing about the drugs. Id. at 405. The Third Circuit found that although there was "no doubt" that the defendant "knew that he was somehow involved in an illicit activity," that

4

evidence was "insufficient to prove beyond a reasonable doubt the essential element that he knew that the purpose of the agreement was the specific unlawful purpose charged in the indictment, i.e., the possession of a controlled substance with intent to distribute." Id. Critically, there was no evidence that Thomas had a prior relationship with the alleged co-conspirators, who specifically denied that they knew him. Id. Although Thomas received several phone calls from one of the alleged co-conspirators on the day of his arrest, it was impermissible to infer from this evidence that Thomas knew the specific purpose of the conspiracy, absent any evidence as to the substance of those calls. Id. at 405-06.

Similarly, in United States v. Wexler, the Government's evidence that Wexler was a member of the conspiracy included that he appeared to be acting as a lookout, that he signaled to one of his alleged co-conspirators, that he spoke several times to another alleged co-conspirator, and that his car contained a CB radio traced to a fictitious customer. 838 F.2d 88, 90 (3d Cir. 1988). However, the Court reversed Wexler's conviction, finding it was impermissible to infer from this evidence that Wexler had knowledge of the specific illegal purpose of the conspiracy as charged, the distribution of hashish, as opposed to some other illegal objective. Id. at 91-92.

In this case, as in Wexler and Thomas, the jury could not permissibly infer from the evidence that the Defendant knew the specific object of the conspiracy was to distribute heroin, cocaine, and cocaine base. There is no evidence that the Defendant had a prior relationship with any of his co-defendants until Nelson Acosta brought him to the house on the day of his arrest. There is no evidence of any prior communications between the Defendant and his alleged co-conspirators. Furthermore, beyond Ms. De Jesus's testimony that the Defendant was counting, there is no evidence that the Defendant said anything while he was in the house. While the jury

5

might infer that the Defendant knew something illegal was afoot once he moved into the kitchen and saw the drugs on the table, this is insufficient to show that the Defendant knew and agreed to the specific illegal purpose of the conspiracy, namely, drug distribution.

The Government's failure in its briefing and at oral argument to point to any Third Circuit cases involving similar circumstances, in which the defendant's conspiracy conviction was upheld, is telling. Such cases require far more evidence that the defendant "obviously" "was cognizant" of the specific illegal purpose of the conspiracy than was presented in this case. See United States v. Thomas, No. 08-3159, 2010 WL 1916209, at *3 (3d Cir. May 13, 2010) (affirming the district court's denial of defendant's motion for judgment of acquittal of his conviction for conspiracy to smuggle drugs, where the defendant on multiple occasions delivered to his co-conspirator a suitcase filled with cocaine as well as cash, and alerted his co-conspirator when the cocaine arrived at its destination); see also United States v. Powell, 113 F.3d 464, 467 (3d Cir. 1997) (holding there was substantial evidence to affirm defendant's conviction for conspiracy to distribute cocaine, including that his brother and co-conspirator consulted him as to the sales price; they lived together, shared packaging supplies, and supplied each other with cocaine to sell; and he admitted to distributing cocaine on a daily basis).

Therefore, the Court grants the Defendant's Motion for Judgment of Acquittal with respect to the count of conspiracy.

### B. Counts II & IV: Aiding and Abetting Possession

However, the evidence is sufficient to sustain the verdict on possession with intent to distribute drugs. The Court considers this a case of constructive possession and finds that the

6

circumstantial evidence is sufficient.

To establish constructive possession, the Government must present evidence "that a jury may infer that the person charged with possession had dominion and control of the narcotic drug, or that he knowingly had power to exercise dominion and control over the drug." United States v. Davis, 461 F.2d 1026, 1035 (3d Cir. 1972) (internal citations omitted). However, "mere proximity to the drug, or mere presence on the property where it is located or mere association with the person who does control the drug or the property, is insufficient to support a finding of possession." Id. (affirming defendant's conviction of possession where the evidence showed that the defendant owned the home in which the drugs were found, she and her father were standing next to a table on which there was evidence of recent drug packaging, and she was arrested while attempting to destroy the drugs).

The Defendant argued that this case is analogous to United States v. Jenkins, in which the Third Circuit reversed the defendant's conviction for drug possession. 90 F.3d 814, 820-21 (3d Cir. 1996). In Jenkins, the defendant was arrested when police arrived around 1:30 a.m. and found him dressed in boxer shorts and a T-shirt, sitting in the living room of an apartment in which there were drugs, two scales, two revolvers, and other drug distribution paraphernalia on the coffee table. Id. at 816. There was no evidence of cutting tools and no drug residue was found on Jenkins or his co-defendant. Id. at 816-17. Neither man attempted to hide the drugs or flee when police arrived. Id. at 817. Jenkins was convicted of two counts, including possession of cocaine with intent to distribute. Id. The district court denied his motion for judgment of acquittal, finding that Jenkins was sitting in close proximity to the drugs on the coffee table, that his attire suggested he was staying in the apartment, and that it could be inferred that Jenkins was

7

going to use one of the two scales. Id. The Third Circuit reversed, finding that "[n]othing but proximity links him to the drugs and drug distribution paraphernalia," which was insufficient to establish that Jenkins had dominion and control over the drugs. Id. at 818.

In this case, unlike Jenkins, the evidence clearly establishes more than the Defendant's mere proximity to the cocaine. The evidence suggests that when he first arrived at the house, the Defendant sat passively in the living room. However, by the time Ms. De Jesus entered the kitchen to prepare the soup, the Defendant was sitting with Mr. Acosta and Mr. Perez at the table with the cocaine. All three men were "working" with the drugs in an assembly-line fashion, which suggests that they each had dominion and control over the drugs. Ms. De Jesus testified that after Luis Perez cut the drugs and Nelson Acosta packaged them, the Defendant was "counting" them or "moving his hands like this as if he were counting." When the police arrived, the Defendant ran out the back door.[1] Viewing the evidence in the light most favorable to the government, a reasonable jury could have inferred that the Defendant had dominion and control over the drugs and found him guilty of constructive possession.

For these reasons, the Defendant's Motion for Judgment of Acquittal will be denied as to Counts II and IV.

O:\Criminal Cases\09-488 Jaimespimentz, et al\Pimentel - Memo Mot Judg Acquittal.wpd

---

[1] Flight "has been consistently held admissible as circumstantial evidence of guilt to be considered with the other facts of the case." United States v. Miles, 468 F.2d 482, 489 (3d Cir. 1972) (citing Allen v. United States, 164 U.S. 492, 499 (1896)).